IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IBN MUHAMMAD,<br><br>        Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>No. 15-6845 (JBS)<br><br>[Crim. No. 12-789 (JBS)]<br><br>**MEMORANDUM OPINION** |

**SIMANDLE, District Judge:**

Petitioner Ibn Muhammad pleaded guilty on December 3, 2013 to one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of theft of mail, in violation of 18 U.S.C. § 1708. On July 15, 2013, this Court sentenced Muhammad to 135 months' imprisonment, followed by five years of supervised release. Muhammad now seeks to vacate, set aside and correct his sentence pursuant to 28 U.S.C. § 2255, asserting that he received ineffective assistance of counsel in connection with his plea negotiations and sentencing hearing. For the reasons explained below, the Court finds that Petitioner received constitutionally adequate representation and will deny the petition.

1. On December 3, 2013, Petitioner Ibn Muhammad pleaded guilty to an Information charging him with one count of bank fraud, in violation of 18 U.S.C. § 1344, and one count of theft

of mail, in violation of 18 U.S.C. § 1708. On July 15, 2013, this Court sentenced Muhammad to 135 months' imprisonment. Relying on the Presentence Investigation Report ("PSR"), the Court calculated that Petitioner's total Offense Level was 26 and his Criminal History Category was VI, resulting in an advisory guideline range under the U.S. Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") of 120-150 months.

2. In calculating Petitioner's Offense Level at the sentencing hearing, the Court, in agreement with the PSR, assigned a four-level enhancement for leadership under the United States Sentencing Guidelines Manual ("U.S.S.G." or "Guidelines") § 3B1.1(a), although the plea agreement did not contemplate a leadership enhancement; the Court found that United States Probation Office's PSR adequately set forth that Muhammad was a leader and organizer of a scheme involving at least five participants. At the same time, the Court also determined that Petitioner was entitled to a three-level reduction for acceptance of responsibility, coming to a final Total Offense Level of 26.[1]

---

[1] The computation of Muhammad's TOL of 26 was driven by Count One (bank fraud) for which the base offense level of 7 (§ 2B1.1(a)(1)) was increased 14 levels for a loss of more than $400,000 but not greater than $1,000,000 (§ 2B1.1(b)(1)(H)). This was enhanced for 50 or more victims (§ 2B1.1(b)(2)(B)) and for his role in the offense as an organizer or leader of the criminal activity involving five or more participants or otherwise extensive (§ 3B1.1(a)). Further, the Court recognized

2

3. Petitioner appealed his sentence to the Third Circuit, principally challenging the four-level leadership enhancement. The Third Circuit upheld Petitioner's sentence, finding in relevant part that the leadership enhancement was constitutional even though Muhammad was not charged with that role in an indictment or information; that the District Court did not err by applying the role enhancement despite the parties' stipulations that included no role enhancement; and that the Government did not breach the plea agreement because it urged the Court not to apply the role enhancement. United States v. Muhammad, 580 Fed. Appx. 131, 136 (3d Cir. 2014).

4. Petitioner now seeks to vacate, set aside and correct his sentence, arguing that he received ineffective assistance of counsel from his attorney, Assistant Federal Public Defender Lisa Evans Lewis, in connection with his plea negotiations and sentencing hearing. [Docket Items 1 & 6.] Petitioner's Amended Petition sets forth three[2] grounds for relief: (1) that his

---

Defendant's acceptance of responsibility and subtracted three points (§ 3E1.1(a) & (b)) for reasons found at the sentencing hearing. (Tr. July 15, 2013 at 27:5-31:13.) Defendant's Criminal History Category of VI was uncontested, based on 19 criminal history points arising from six prior felony convictions for crimes including burglary, distribution of crack cocaine, possession of cocaine, robbery, aggravated assault, and distribution of marijuana.

[2] The Amended Petition also raised an additional ground for relief, that counsel was ineffective "for misleading defendant to believe the court could only increase his sentence above the guideline range for offense level 22 based upon factors NOT

3

counsel was ineffective "for failure to adversarially challenge the government's evidence toward leadership enhancement" (Amended Petition at 5); (2) that his counsel was ineffective "for failure to object to leadership role enhancement on grounds of fairness and equity" (Am. Pet. at 6); and (3) that his counsel was ineffective "for advising defendant to stipulate to a four-level enhancement under U.S.S.G. § 2B1.1(b)(2)(B) where the number of victims was actually less than 50." (Am. Pet. at 10.)

    5.   To prevail on a claim of ineffective assistance of counsel, Petitioner must demonstrate that (1) counsel's performance was so deficient as to deprive him of the representation guaranteed to him under the Sixth Amendment of the U.S. Constitution, and (2) the deficient performance prejudiced the defense by depriving the defendant of a fair trial. <u>Chaidez v. United States</u>, 133 S. Ct. 1103, 1107 (2013); <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). With respect to counsel's performance, her "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," and are afforded high deference from a reviewing court. <u>Strickland</u>, 466 U.S. at 689, 690. To show prejudice from counsel's performance, Petitioner

---

found within the guidelines themselves." (Am. Pet. at 8.) Petitioner withdrew this claim in his Reply Brief. (Reply at 1.)

4

must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Rainey v. Varner, 603 F.3d 189, 197-98 (3d Cir. 2010) (quoting Strickland, 466 U.S. at 694).

6.  In this case, none of the "Grounds for Relief" identified by Petitioner rise to the level of ineffective assistance of counsel, individually or collectively.

7.  First, Muhammad asserts that his counsel provided ineffective assistance at his sentencing hearing by not challenging the government's allegedly insufficient evidence for the leadership enhancement. Petitioner received a four-level enhancement to his Offense Level under U.S.S.G. § 3B1.1(a), which applies where "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Muhammad contends that the PSR did not adequately establish that the "check cashers" qualified as "participants," or that he, as opposed to his co-defendant Michael A. Ingalls, Jr., was a "leader," and that his attorney should have objected at the sentencing hearing to the imposition of the four-level enhancement on the basis of the information in the Report.

8.  Defense counsel's conduct was neither deficient nor prejudicial. The Government, and Ms. Lewis, contend that she

5

made the choice at the hearing not to object to the Court's sentence enhancement "because an argument against the application of such an enhancement was not supported by the law or the facts in the case" given the details Probation had adduced in the PSR and Petitioner's admissions at his plea hearing, and Ms. Lewis would have been prevented from arguing any such meritless position before the court under the New Jersey Rules of Professional Conduct. (Declaration of Counsel ("Decl.") ¶¶ 10, 13(a).) Counsel's strategic decisions are entitled to a high level of deference, <u>Strickland</u>, 466 U.S. at 689, and the Court has no trouble finding that in this instance, Ms. Lewis's decision to concede the sufficiency of the evidence in the PSR was not unreasonable "under prevailing professional norms" where she was explicitly attempting to <u>conform</u> with the bar's rules of professional conduct.[3]

9. Moreover, Ms. Lewis's decision to concede this point at the sentencing hearing was not prejudicial because the Court would have still found the enhancement applicable even if she had argued the point. At the sentencing hearing, the undersigned

---

[3] The Government also contends that Ms. Lewis's concession of the four-level enhancement may have been a strategic choice to bolster her position on the contested three-level reduction for acceptance of responsibility. (Gov. Br. at 10-11.) Such a strategic choice is entitled to a high level of deference, especially in light of her success in obtaining the reduction. <u>Strickland</u>, 466 U.S. at 689.

6

noted that Probation "more than adequately" set forth in the PSR reasoning for why Muhammad "was indeed a leader, organizer, and that there were at least five participants in the scheme," even after the Government argued that it had to "stand by its plea agreement" which did not contemplate the leadership enhancement. (Sentencing Hearing Transcript (Government's Ex. E) at 5:8-6:9.) Given the strength of the evidence summarized by Probation – describing how Muhammad and Ingalls would recruit check cashers, alter and forge checks, and instruct the check cashers what to do in the bank and what to say to bank personnel or law enforcement – and Petitioner's admissions in the plea agreement and at the plea colloquy, Petitioner cannot say that "the result of the proceeding would have been different," Strickland, 466 U.S. at 489, if his counsel had acted differently at the sentencing hearing.

10. Factually, this was not a close call. The Court of Appeals identified Muhammad's challenge to the § 3B1.1(a) enhancement for leadership role as "frivolous." United States v. Muhammad, 580 Fed. Appx. 131, 136 (3d Cir. Sept. 24, 2014). The Court of Appeals held that defense counsel did not fail to raise any non-frivolous claim on appeal. Id. There was no dispute that Ingalls and Muhammad were the organizers of a large conspiracy to steal checks from the incoming mail of businesses and residences, especially from curbside mailboxes on weekends. (PSR

7

¶ 10.) Muhammad and Ingalls and others they supervised would steal these checks and recruit check cashers. The illicit check cashers were typically drug-addicted persons with valid driver's licenses. Muhammad and Ingalls would alter the check's payee to substitute the illicit check casher's name (id.) and they would travel with the casher to various banks where the casher would present the check for cashing. (Id.) On successfully cashing the altered check, the casher would keep a portion and remit the rest to Muhammad or Ingalls. (Id.) There were over 20 check cashers involved in this scheme (id. at ¶ 12), and the PSR presented summaries of interviews with six of them, namely R.B., F.L., J.G., N.Y., D.W., and B.V. (id. at ¶¶ 13-16), most of whom identified Muhammad as a person performing the recruitment, check alteration, and fraudulent cashing functions.

11. This was an extensive network directed by Muhammad and Ingalls, extending for 15 months from September 2010 to January 2012, utilizing over 20 illicit check cashers, presenting about 100 false and fraudulent, altered or forged checks drawn on accounts of over 20 financial institutions of over $600,000. (Id. ¶ 50.) After paying the check cashers, Muhammad and Ingalls split the proceeds 50/50. (Id. ¶ 50.) In accordance with U.S.S.G. § 3B1.1(a), n. 4, both Muhammad and Ingalls qualify as the leaders and organizers of this extensive conspiracy. (Id. ¶ 51.) Petitioner has proposed no evidence that his attorney

8

should have raised to refute these documented facts regarding the number of Muhammad's subordinates in the mail theft and check fraud schemes.

    12. Next, Petitioner argues that his counsel was ineffective at his sentencing hearing because she did not challenge the leadership enhancement "on grounds of fairness and equity." Petitioner identifies five arguments his counsel should have raised at the hearing that would have "disqualify[ied] the enhancement based on fairness":

> (1) The application of § 3B1.1 was contrary to the agreed upon offense level under the plea agreement; (2) all of the evidence utilized to apply said enhancement was known to the government in 2011, see PSR, pp. 6-9, and the government's failure to address the issue in the plea agreement – finalized in December 2012 – amounted to an express waiver of its application; (3) the defendant agreed to save the government the expense of convening a grand jury, which would have likely charged multiple counts of bank fraud rather than just one – bringing into question whether check cashers participated in group conduct-, yet he was effectively punished for his acquiescence to making matters easier; (4) the government's failure to establish a loss amount of $750,000 should be offset by striking the enhancement under § 3B1.1; and (5) by not making independent findings in favor of the defendant (the PSR's use of exaggerated language against the defendant amounted to a bias) the equitable balance was not properly restored.

(Pet. Reply at 20.)

    13. Petitioner's arguments fail to recognize two key facts: first, that the Court imposed the leadership enhancement sua sponte, based on the PSR, even over the Government's objection, and second, that the Court was free to disregard the

9

stipulations in the parties' plea agreement. In other words, the Government did not act contrary to the plea agreement, such that "fairness and equity" required a finding against the Government's position. And, as described before, even if Petitioner's counsel had raised these arguments at the hearing, there is no evidence that "the result of the proceeding would have been different" because the Court concluded on its own that the enhancement was warranted. Strickland, 466 U.S. at 489.

14. Finally, Petitioner argues that his counsel was ineffective for advising him to stipulate to more than 50 victims. According to Petitioner, her advice caused him to stipulate to victims who should not count towards the total under the Sentencing Guidelines because they did not suffer "actual losses" from the theft of their mail. (Am. Pet. at 9.) This is incorrect. Application Note 4(C)(i) makes clear that "victim" under U.S.S.G. § 2B1.1 refers both to "any [individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies] who sustained any part of the actual loss determined" under the offense or "any [individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies] who was the intended recipient, or addressee, of the undelivered United States mail." Application Notes 1 and 4(C)(i). Accordingly, the Government would not have had to prove

10

that any businesses or individuals whose mail was stolen as part of the scheme suffered any "actual losses" in order to count as "victims" of the scheme. Because the PSR presented reliable evidence that the scheme victimized more than 50 individuals and companies who were "intended recipients or addressees" of undelivered mail, and several dozen additional banks which were victims of the check fraud scheme as detailed in the PSR and to which Muhammad owes restitution (see PSR ¶ 54), Petitioner's counsel was not ineffective in counseling him to stipulate to that number of victims. The stipulation was totally consonant with the facts.

15. Additionally, Petitioner argues in his reply brief that, in finding more than 50 victims, the PSR incorrectly applied the "Special Rule" in Application Note 4(C)(ii)(I) of U.S.S.G. § 2B1.1, and that his counsel should not have advised him to stipulate to 50 victims on that basis. This "Special Rule" applies to cases with undelivered United States Mail involving "A United States Postal Service relay box, collection box, delivery vehicle, satchel, or car," and provides that each case "shall be considered to have involved at least 10 victims." According to Petitioner, "the mail stolen from Willis Honda came from a personal collection box," not one owned by the United States Postal Service, and thus "is not a 'United States Postal Service collection box' within the meaning of Application

11

Note 4(C)(ii)(I)." This is of no moment. Even if Willis Honda's mail was not counted, the long list of victims is shortened by one entity, which is immaterial to the total calculation. In no way was defense counsel deficient in failing to raise such a trivial point or in counseling acceptance of the more-than-50-victim stipulation.

16. Petitioner's sentence is correct and he has failed to identify any other bases on which habeas relief could be granted. For these reasons, the Petition is denied. An accompanying Order will be entered.

17. The Court will deny a certificate of appealability, finding that this petition does not present a question that is reasonably subject to debate under the Constitution or the laws of the United States.


**July 31, 2017**                                    **s/ Jerome B. Simandle**
Date                                                     JEROME B. SIMANDLE
                                                                        U.S. District Judge